32 N.J. Super. 204 (1954)
108 A.2d 111
STATE OF NEW JERSEY, PLAINTIFF,
v.
PETER RICCIARDI, ANTHONY LIGGIO, JR., ALBERT JOHN GOLDSCHMIDT AND JOSEPH NOVICKI, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 13, 1954.
*205 Mr. Harold Kolovsky, Deputy Attorney-General and Acting County Prosecutor, attorney for the State (Mr. Martin D. Moroney, Deputy Attorney-General and Acting Assistant County Prosecutor, of counsel).
Mr. John E. Selser, attorney for defendants.
DREWEN, J.C.C. (temporarily assigned).
These defendants are separately indicted for the unlawful keeping of slot machines or machines in the nature thereof, "which may be used for the playing of (sic) money," in violation of N.J.S. 2A:112-2 (formerly N.J.S.A. 2:135-2). The indictments against Liggio, Goldschmidt and Novicki were, with the consent of the accused, consolidated for trial together as one, and the said defendants having signed the appropriate waivers their cases were tried by me, sitting without a jury. Immediately upon the trial's conclusion the defendant Ricciardi likewise waived his right to jury trial and through his counsel stipulated with the State that all testimony, for the State and for the defense, previously adduced in the trial of the other three defendants should for all purposes be dealt with as the testimony in the trial of the indictment against the said Ricciardi.
Upon the conclusion of all the proceedings aforementioned, counsel for the four defendants moved for judgments of acquittal on the ground of a fatal variance between the indictments and the proofs, and also on the ground of the contended failure of the State to prove the respective offenses charged.
*206 The statute above-cited under which the indictments are framed reads as follows:
"Any person who has or keeps in his place of business, or other premises, any slot machine or device in the nature of a slot machine, which may be used for the playing of (sic) money or other valuable thing, is guilty of a misdemeanor."
The single point to be decided is whether or not the machines here in question come within the language "or device in the nature of a slot machine." The defendants contend they do not. The machines are what are commonly known as pinball machines. They are described in complete detail in the opinion of the court in Hunter v. Mayor and Council of Teaneck Township, 128 N.J.L. 164 (Sup. Ct. 1942), p. 166 et seq. Specifically, the instant machines are not equipped for the players' making or recording of a high score. The result of a so-called "win" is ostensibly nothing other than the privilege of playing additional "free games," the number of "free games" won being recorded by the mechanism. The player initiates the operation by inserting a coin in a slot provided for the purpose. The coin makes available to the player, within the enclosure of the mechanism, the balls that are to be played by him. Each ball is in turn propelled by a released spring upward on an inclined plain, then rolling downward, making its chance contacts with marked and identified places and so determining the result of the venture. It is obvious that a machine of the type in question can be used in gaming for money simply by dealing with the free games won as entitling the player not to the games but to a designated equivalent in money. That is precisely what these defendants did. Not only is this not denied, it is expressly admitted, save in the case of the defendant Ricciardi, whose position in the proofs will be dealt with later.
As already stated, the question submitted by defendants' motion is not whether these machines were used for gaming, that being conceded, but whether, and notwithstanding such use, they can be regarded as "in the nature of slot machines." In their admission of a gaming use defendants make the *207 contention that the indictments should have been drawn not under N.J.S. 2A:112-2 but N.J.S. 2A:112-1, the pertinent portion of the latter section reading as follows:
"Any person playing for money or other valuable thing * * * at billiards, pool, tennis, bowls or shuffleboard, or A.B.C. or E.O. table, or other table * * * or with any slot machine or device in the nature of a slot machine, or with any other instrument, engine apparatus or device having one or more figures or numbers thereon, is guilty of a misdemeanor." (Italics supplied.)
The fact that defendants might also have been properly indicted under another section does not alter the problem.
I think there can be no doubt that the machines here are in the nature of slot machines. As our courts have held, the three components of a gaming episode are price, chance and prize. Here the price is irretrievably collected from the player by the use of the provided slot. The second element, that of chance, is provided by what takes place consequent upon the propulsion of the ball. The third element or prize is realized by the human agency which supplements the machine and "pays off," as the vernacular has it, on the basis of the so-called "free games." The supplementing of the human agency for the awarding of the prize is what defendants rely on as presenting a complete distinction between these machines and slot machines in the ordinary sense of that term. I cannot agree that there is any such complete distinction. The first two components of the gaming episode are taken care of in their entirety by the subject machines. The third one the machine partially takes care of: it determines by the chance operation of its parts what the prize is to be. All that defendants were required to do respecting the prize was physically to bestow it, which they did. In a word, they simply made good what the machine awarded.
"Device" is a broad, inclusive term; and the words "in the nature of" admit of wide approximation in varying degrees. Any respect in which the machine in question is less mechanical in its gambling than the more elaborate self-paying slot machine is made up by defendants' doing what the machine fails to do, which is but the single, ultimate detail of the *208 gaming venture. We may take it also from what defendants' counsel said in his opening statement to the court, that a measure of latitude is to be accorded the category that embraces gambling devices of the slot machine kind. Counsel said:
"We are, of course, all familiar, by observation rather than practice, with the so-called `one-armed bandit' and devices of that nature, many of which are border-line unto these; but which have a pocket out of which moneys are discharged in keeping with certain mechanical features built within the machine." (Emphasis supplied.)
The tenor of defendants' argument would presuppose there can be no such thing as a variant of a slot machine in the stricter sense, that there must be the mechanical money dispensing feature or it is not "in the nature of a slot machine." Common sense is to the contrary.
Defendants make the further contention that these are devices not of chance but of skill. The element of skill here, if it exists at all, is to be found solely in the attainment of exquisite precision in the force with which the ball is propelled upward by the plunger as the player releases it. Of course, the highest degree of skill is theoretically conceivable in anything, even though it is not at all to be looked for. But experts in the true sense of the word are rarities; and since we are dealing with a device made for indiscriminate public use I think we may dismiss from our thinking all concern for mastery. The machines were demonstrated before me in the course of the trial and I have no doubt whatever that in their playing chance and not skill is by far the dominant factor. However foolish may be the susceptibility that yields to the allure of dropping a coin in a slot for the inducement thereby of a mechanical operation, with the hope of making a win on the chance result thereof, the fact is that the susceptibility is prevalent and harmful enough to occasion a very definite and persistent legislative policy of prohibition.
Apparently the question here presented is one of novel impression. The cases are not inconsistent with the view here expressed. In State v. Betti, 23 N.J. Misc. 169 (Ct. Q. Sess. *209 1945), the machine contained no device for the recording or awarding of free games. The same appears to be true of Stirling Distributors, Inc. v. Keenan, 135 N.J. Eq. 508 (E. & A. 1944), where the court said of the machine before it, "There is no free playing nor prizes or a return of any money." In State v. Brandt, 122 N.J.L. 488 (Sup. Ct. 1939), a judgment of conviction was reversed for the reason, as the court said, "There is nothing by way of proof that this machine or any other of its kind was ever so used [for gambling] or that it could be, and this we think a fatal defect and requires reversal of the judgment." In the present case the contrary is true. See also Hunter v. Mayor and Council of Teaneck Township, supra.
The owner of the subject machines was the defendant Ricciardi. The other defendants were his bailees and it was in their premises that the machines were placed for use by any one wishing to play them. Ricciardi made or caused to be made for him periodic tours of collection from the machines. He denies that he authorized any "pay-offs" and maintains he gave instructions to employees to make mechanical changes in the devices that would render impossible the free game record. He assumed such changes had been made, though he did not know that to be so. He admits, however, that the machines could not be played for the amusement of getting high scores. I find Ricciardi's testimony contradictory and weak. I am firmly convinced that what his lessees admit is the truth, that they paid off on the basis of free games, and I infer from the proofs that they did not do so without an understanding with Ricciardi, their bailor, which called for an adjustment of moneys every time the coin box of the machine was opened for collection. In one instance the testimony shows that the witness saw the record of the pay-offs to him being made at the time by the representative of one of the defendants.
The motion for judgment of acquittal is denied. It is my judgment that the State has proved each defendant guilty by proof beyond a reasonable doubt. Let judgment of conviction be entered accordingly.